**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILILNOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 12 CR 651 |
| ) | |
| SANTIAGO CISNEROS-GONZALES ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On May 28, 2013, the Court made a detailed oral ruling, covering some sixteen pages of transcript, granting defendant Santiago Cisneros-Gonzales's motion to suppress evidence. The government has filed a motion to reconsider. The Court denies the motion for the reasons stated below.

### The motion to suppress and the hearing

In his motion to suppress, Cisneros-Gonzales alleged, among other things, that there was no valid basis for the search of the truck he was driving and that any consent to search "was a result of mere acquiescence to police authority." Mot. to Suppress ¶ 8. The government responded that the search followed a legal stop for a safety inspection of the truck; Cisneros-Gonzales consented to the search; and the search was supported by a positive alert by a drug detection dog. In reply, Cisneros-Gonzales challenged these contentions, including the contention that the search was justified by his consent. He submitted an affidavit along with his reply. In that affidavit, Cisneros-Gonzales stated that after being ordered out of his truck, he "remained in [a] police vehicle while multiple searches of his tractor/trailer were conducted." Reply, Ex. B ¶ 6. He also

stated that while in the police vehicle, he was presented with a consent-to-search form that he did not understand and that he signed because he thought he had no choice. He stated that he did not voluntarily agree to a search of his truck. *Id.* ¶¶ 7-11.

The Court ordered an evidentiary hearing on the motion. Prior to the hearing, the government advised that it would not rely on the alleged positive alert by the dog as a basis for the search. This left only consent as a basis to justify the search. The government was certainly aware that it had to prove by a preponderance of the evidence that Cisneros-Gonzales had voluntarily consented to the search.

During the government's case in chief at the evidentiary hearing, it elicited testimony that Cisneros-Gonzales had voluntarily consented to the search, both orally and in writing, before the search took place. Cisneros-Gonzales then testified in the defense case. During his testimony, he stated that the search had already begun before he signed the consent form.

The government had a full and fair opportunity at the hearing to question Cisneros-Gonzales regarding the timing of the search and to present contrary evidence – and, in fact, it did so. During closing arguments, defense counsel argued (among other things) that the consent came after the search had begun, amounted to acquiescence to authority, and was involuntary. The government had a full and fair opportunity to respond to these arguments after defense counsel made them. Also during closing arguments, the Court asked counsel questions regarding the timing of the consent, which made it even clearer (even if it had not already been clear) that this was at issue and was a point that the Court was considering. Again, the government had a full and fair opportunity to address these issues at the time of closing arguments on the

motion to suppress.  In addition, approximately six weeks passed between the conclusion of arguments and the Court's ruling.  Despite knowing that the timing of the consent was an issue that the Court was considering, the government did not come back and ask to supplement the evidence in any way prior to the Court's ruling.

In its oral ruling, the Court found that defendant had not consented to the search until after it had already begun and that the consent was a mere submission to authority and did not justify the search.  *See* May 28, 2013 Tr. at 15-16.  The Court granted the motion to suppress.  The government has moved to reconsider.

### Timeliness of the government's arguments in reconsideration

The government now offers what it contends is significant additional evidence that supports its argument that the search was justified by voluntary consent given before the search commenced.  The request is untimely, in the sense that the evidence in question was available long before the Court made its oral ruling.  As the Court has discussed, there was plenty that put the government on notice before, during, and at the hearing that the timing and voluntariness of the consent was at issue.  The government addressed the timing issue during the testimony that it elicited even before Cisneros-Gonzalez testified at the hearing.  And it had an opportunity to do so again, by rebuttal, after he testified on that day.  The government also could have done so several days later, when the parties came back for closing arguments on the motion to suppress.  Finally, after hearing the Court ask a number of pointed questions directed to the timing issue during arguments on April 16, the government could have sought to reopen the hearing at any time between then and the Court's ruling six weeks later, on May 28, 2013.  Given these circumstances, it is inappropriate for the government to have sat

3

back to wait for a ruling and then offer "new" evidence only after an adverse ruling. The government has offered no valid justification for its late submission of this evidence.

## Merits of the government's motion

Even if the government's motion to reconsider were procedurally appropriate, the Court would deny it, for the reasons stated below.

The government's first argument is that additional records that it obtained after the hearing support its contention that the search of the truck came after Cisneros-Gonzales had consented, not before. According to the government, these records reflect that state trooper Martinez, the officer who accompanied the drug-sniffing dog, arrived on the scene at 12:16 p.m. The records the government has submitted also reflect that another state trooper, Matt Wierzbinski, arrived at the scene at 12:17 p.m. Finally, the records reflect that state trooper Chris Wilkes, who performed the initial stop of the truck, reported to dispatch at 12:27 p.m. that the truck "has 3 boxes of meth in it, out here with narcint, going to be awhile, got guy to cooperate." Govt. Mot., Ex. D at 1. The government then argues the following:

> If, as this Court concluded based on the evidence presented at the hearing, by 12:20 p.m. the officers had already searched the truck and then convinced the defendant to sign a consent form, there appears to be no reason why they would wait another seven minutes to notify dispatch of such a large seizure. Rather, it is likely that the handwritten [12:20 p.m.] time on the consent-to-search form is off by approximately two minutes, but that the sequence of events unfolded as the officers testified. After all, the officers recorded these times and events in their report shortly after they occurred. Unlike the defendant, the officers have been consistent and credible. Moreover, the officers had no motive to fabricate consent, as they had a positive dog alert, which gave them probable cause to search the truck, and the defendant was cooperating. Finally, it does not seem feasible that the officers could have searched the tractor and then obtained consent from the defendant in the two minutes between the 12:18 p.m. "time complete" reported by the dog handler and the 12:20 p.m. time on the consent-to-search form.

4

Govt. Mot. at 8-9.[1]

The government's argument is based on several incorrect premises, and it makes unwarranted assumptions that are at odds with what the Court found, and still finds today, regarding the credibility of the officers and the defendant. First, at the hearing, the Court *already had* the information that trooper Martinez arrived at the scene at 12:16 p.m. Indeed, the parties stipulated that Martinez would testify had arrived at the scene at 12:16 p.m. and completed his assignment at 12:18 p.m. *See* Apr. 11, 2013 Tr. 157-58. The fact that Martinez had completed his work – the "exterior sniff" by the dog – by 12:18 p.m. is fully consistent with, and supports, the Court's finding that by the time Cisneros-Gonzales signed the consent form at 12:20 p.m., the interior search of the truck had already begun.

Second, and significantly, the government's motion to reconsider incorrectly assumes that the Court concluded that the interior search of the truck was *completed* by the time Cisneros-Gonzales signed the consent form (recorded contemporaneously by trooper Wilkes as taking place at 12:20 p.m.). Not so, and nothing in the Court's oral ruling comes close to suggesting such a finding. Rather, the Court found credible Cisneros-Gonzales's testimony "that he did not give any consent *until after the search had already begun*." May 28, 2013 Tr. 15. In other words, the Court found that Cisneros-Gonzales did not give his consent until after officers had already entered the

---

[1] The government's contention that the positive dog alert removed any motive by the officers to "fabricate consent," Govt. Mot. at 9, is unavailing. First, the argument misses the point. The issue was the timing of consent, not its existence. The Court did not find any "fabrication" of consent. Second, the argument is speculative and unsupported. It assumes that the alleged positive dog alert actually happened, in a way that was reliable. There is no basis in the record to support this. Indeed, the government specifically disavowed reliance on the alleged positive alert after Cisneros-Gonzales challenged the search.

5

truck, not that he did not give his consent until after they had completed the search. And if a reasonable argument could be made that this is unclear from the passage of the ruling just quoted – which the Court seriously doubts – any doubt is removed by the following finding that the Court made: "[Cisneros-Gonzales's] consent, assuming he understood that that's what he was giving, was a mere submission to a claim of authority, specifically *the fact that the search was already taking place in his view*." *Id.* 16 (emphasis added).

Third, as for the government's argument that it would have made no sense for the officers to wait seven minutes after finishing the search to notify dispatch that they had found a large quantity of narcotics, *see* Govt. Mot. at 8-9, the Court has two comments. As just described, the government's argument is premised on a misunderstanding of the Court's findings. The Court made no finding that the interior search had been *completed* by 12:20 p.m., but rather only a finding that the officers had by that time entered the truck to search, a finding that contributed to the Court's determination that Cisneros-Gonzales's purported consent did not come until after he had the officers had entered the truck "in his view," that is, within his sight. In any event, the Court disagrees with the government's contention that it would have made no sense for Wilkes to have waited even a few minutes to call dispatch. As the Court found (and as Wilkes testified), Cisneros-Gonzales's admissions to Wilkes did not come until once he had consented – "at the end of the consent process, not at the start." May 28, 2016 Tr. 14. A several-minute delay between finding the narcotics and Wilkes's report to dispatch reasonably would be attributable to the other officers finishing up the search and Wilkes obtaining from Cisneros-Gonzales an admission and an agreement to

6

cooperate – which Wilkes told dispatch had already happened by the time of his 12:27 p.m. radio call.

The government's next argument is that the Court misunderstood or mistakenly recalled an item of evidence, regarding when Wilkes contacted Martinez in relation to when Cisneros-Gonzales signed the consent form. Here is what the Court said in its ruling:

> The parties stipulated that Trooper Wilkes notified Officer Martinez and that Officer Martinez arrived on the scene at 12:16 p.m. and completed his activity at 12:18 p.m. That's what Officer Martinez's contemporaneous report also says, and that was attached to the government's response to the motion.
>
> The problem is that the arrival of Officer Martinez and the completion of his work based on the times that are stipulated to and recorded on Officer Martinez's form doesn't come after Mr. Cisneros signed the consent form, which is what Trooper Wilkes testified took place. Rather, Officer Martinez's arrival with the dog at 12:16 p.m. comes several minutes before Mr. Cisneros signed the consent form at 12:20 p.m. And the completion of Officer Martinez's work, namely, the exterior sniff, comes at 12:18 p.m., which is still a couple of minutes before Mr. Cisneros signed the form. And it's likely that Trooper Wilkes would have had to notify Officer Martinez and ask him to come to the scene even before 12:16, so, in other words, before 12:16 and possibly several minutes earlier depending on how far away Officer Martinez was.
>
> This directly contradicts the testimony of both Officer Wherry and Trooper Wilkes who said that Officer Martinez and the dog did not arrive on the scene until after Mr. Cisneros had already signed the consent form which, according to Trooper Wilkes, was at 12:20. The evidence is relatively clear that the interior search of the vehicle came right on the heels of, in other words, right after the exterior sniff by the dog. So if the time stipulated by the parties and noted by Officer Martinez on his form are correct, which I find they are, this corresponds with the testimony of Mr. Cisneros that he did not sign the form until after the interior search of the vehicle had already begun.

May 28, 2013 Tr. 12-13.

The government says, citing page 12 of the transcript, that the Court had a

7

"mistaken recollection that Trooper Wilkes testified that he contacted Trooper Martinez *after* the defendant signed the consent form." Govt. Mot. at 9 (emphasis in original). The Court made no such finding. To the contrary, the Court quite plainly found that Wilkes had contacted Martinez *before* Cisneros-Gonzales signed the consent form. Contrary to the government's argument, what the Court stated in its findings was that both officer Wherry and state trooper Wilkes said that Martinez and the dog *did not arrive* until after Cisneros-Gonzales signed the consent form – not that Wilkes did not contact Martinez until after the consent was signed. This, in fact, how the testimony came in. Wherry testified that he waited in his car while Wilkes brought Cisneros-Gonzales back to his (Wilkes's) car and that at some point after that, Wilkes motioned him over to the car and said that he had obtained consent to search and had called for a canine officer. April 11, 2013 Tr. 27-28. A couple of minutes after that, Wherry said, trooper Martinez arrived. *Id.* 29. In short, Wherry testified, as the Court found, that Wilkes had already summoned Martinez by the time Cisneros-Gonzales signed the form. Wilkes testified similarly: he stated that right after Cisneros-Gonzales signed the form, he got out of his car and spoke briefly to trooper Wierzbinski, and "Trooper Martinez had arrived also at that time." *Id.* 109. In other words, the clear import of Wilkes' testimony was that he had summoned Martinez before Cisneros-Gonzales signed the consent form, exactly as the Court recited.

To be sure, the Court found the testimony of Wilkes and Wherry regarding the sequence of events to lack credibility (a topic to which the Court will return in a moment). The point is, however, that contrary to the government's contention in its motion to reconsider, the Court's findings and ruling were not based on any sort of

8

mistaken recollection or understanding regarding how the officers testified regarding when in the sequence of events Wilkes summoned Martinez.

In addition, the government also takes issue with one aspect of the Court's credibility finding regarding officer Wherry, specifically, the Court's statement that it did not find credible Wherry's testimony about seeing "tooling" marks on bolts on the rear trailer door. The government now says that there was a socket wrench found inside the tractor, of the sort that (the government contends) could have made these marks. This does not, and would not have, altered the Court's view about Wherry's lack of credibility. First, the Court did not base what it said about this particular point on any belief that there were no tools, but rather (among other things) on the fact that Wherry had not noted the purported tool marks in his report and had not mentioned this when he described to Wilkes the factors that made him suspicious about the truck. Second, the Court cited this point in its ruling merely as an "example[ ]" of "credibility problems with the officers' oral testimony" that the Court had found, May 28, 2013 Tr. 13, not as the sole basis – or anything close to it – of its determination regarding credibility. As the Court noted in its ruling, "there are also other issues." *Id.* 14. In making the credibility determinations that were the foundation of its ruling granting the motion to suppress, the Court considered all of the evidence, including other factors beyond the specific points the Court cited, as well as the witnesses' demeanor. Nothing in the government's motion to reconsider leads the Court to a different view regarding the witnesses' relative credibility.

Finally, the government contends, in the title of the final heading in its motion, that "this court's ruling did not address defendant's significant credibility issues." Govt.

9

Mot. at 12. The government goes on to say that "this Court did not address defendant's credibility in its ruling." *Id.* at 14. The first point is, to be blunt, ridiculous, and the second is an out-and-out misrepresentation of the record. First, credibility was the key issue at the hearing, a point made obvious from even a cursory review of the Court's detailed oral ruling, throughout which the Court specifically addressed credibility issues. The Court may not have mentioned each and every point that the government made in its argument or that it makes now in its motion regarding Cisneros-Gonzales's credibility, but there is not and never has been any requirement that a judge mention each and every bit of evidence in making a ruling. Moreover, even if Mr. Cisneros-Gonzales were not credible on every aspect of his testimony, a fact finder does not have to accept all of a witness's testimony but rather can accept some of it, as judges routinely instruct juries. *See* 7th Cir. Pattern Crim. Jury Instruction 3.01 ("You may accept all of what a witness says, or part of it, or none of it."). In that regard, and to contrary to the government's erroneous contention that "this Court did not address defendant's credibility in its ruling," the Court specifically "found credible Mr. Cisneros' testimony that he did not give any consent until after the search had already begun." May 28, 2013 Tr. 15. The timing of the consent was a key focus of the Court's ruling, and the Court's determination of Cisneros-Gonzales's credibility on that point could hardly have been clearer.

**Conclusion**

As described above, the Court concludes that the government's motion is procedurally inappropriate but also concludes that the government's claimed new evidence does not alter the Court's ruling on the motion to suppress. The Court found,

10

and continues to find, the defendant credible on the points critical to the ruling and the government's witnesses to lack credibility on those points. The Court denies the government's motion to reconsider [dkt. no. 39]. The case remains set for a status hearing on July 16, 2013 at 1:30 p.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 8, 2013